The last case on the docket is case number 4-14-0672, People v. Charles Evans. For the state's attorney, John Zimmerman. Thank you. Ms. Shaver, are you ready to proceed? I am ready. You may. May it please the Court, Counsel. Good morning. On behalf of the Office of the State Appellate Defender, my name is Mariah Shaver, and I represent Mr. Charles Evans. The touchstone of the Fourth Amendment is reasonableness. Charles Evans was just a young man who happened to be a late hour in a high-prime area. He was not doing anything out of the ordinary when Officer Harold stopped him. They spoke for 3-5 minutes before Charles first removed his hands from his pockets after being ordered to do so. After being told to remove his hands from his pockets multiple additional times, Charles simply asked, why? Instead of receiving an answer to his question, Charles Evans received a pat-down search. When Officer Harold saw Charles walking down the street, he did not see a man who looked like he had just committed a burglary. He saw a convenient opportunity to make an arrest. Officer Harold did not have a reasonable, articulable suspicion that Mr. Evans was involved in any criminal activity, nor would a reasonably prudent person in his circumstances have been warranted in believing Charles posed a safety threat that would justify a pat-down search. One of the key disagreements between the parties in this case is at what point Mr. Evans was that Officer Harold conducted the pat-down search. The question is at what point in time the seizure happened, and if it was lawful at that time to seize Mr. Evans. Our position is that Mr. Evans was seized when Officer Harold initially stopped him, or at the latest, when he was first ordered to remove his hands from his pockets. Even if this Court finds that the initial encounter was consensual, and remained that way after Charles was ordered to remove his hands from his pockets, the State concedes that Charles was seized when he asked why, rather than immediately removing his hands from his pockets. However, if this was a consensual encounter, up until the point that Charles was asked, Charles asked the question why, then there cannot be a lawful basis to seize him at that time, because terminating that consensual encounter, if it wasn't at consensual, cannot be the basis of reasonable, articulable suspicion that's necessary to justify Terry's stop, or Terry's seizure. The point of a consensual encounter is that a citizen can choose to end that encounter at any time. So if this really was still a consensual encounter by that point, then Charles was free to end it by deciding not to remove his hands from the pockets, and Harold could not base his decision to seize Mr. Evans on that choice of Charles to end the encounter. Because a Terry search presupposes a valid Terry stop, the only way the search could be valid, is if Charles was lawfully seized either upon the initial approach, or when he was first ordered to remove his hands from his pockets. Well, what's the indication that he was ending the consensual encounter, by asking a question that indicates you expect an answer? That isn't ending the encounter, that's continuing the encounter. It was by not removing his pockets, Your Honor. That was his indication that he was not going to continue participating in the exchange he was having with the officer. How many times had he been told, how many times did we, does the record show in and out, in and out, in and out? Your Honor, Officer Harold said multiple times. I don't recall if he was specifically asked how many, I don't, I know that he did not provide a specific number. I do know that counsel asked him, defense counsel asked him about his police report not indicating the multiple times, but he did testify that it had been multiple times that this had gone back and forth, where Mr. Evans had removed the hands after being asked, but then ultimately placed them back in his pockets, until that final time, at which point he did not remove his hands, and also asked the question, why? Even if this court finds that... Is it lawful for a police officer to ask someone on the street, after midnight, and a high crime area, I'd feel more comfortable if you took your hands out of your pocket, and the guy does, and he puts them back. I ask you to remove your hands from your pocket, he does, and he puts them back. If those requests were lawful, why doesn't defendants' failure to comply with those, even though he may have the right to, why doesn't it immediately transform? So that it's reasonable for the officer to say, okay, I've got to pat you down. I'm sorry, I don't think I understood the question. Are you asking, I guess I'm asking you to repeat the question, please. Well, had enough happened at that point, that an officer in those circumstances would feel justified to pat the defendant down. Prior to Mr. Evans declining to remove his hands and asking why? Right at that point, right at that point. At that point, your honor, Mr. Evans had not done anything to raise the officer's suspicion that there was any danger or a safety threat to justify the pat down. Well, except that he said the time, the location, perhaps the house the defendant had come from, the possibility that someone engaged in such an activity would be carrying a firearm or a weapon. And the defendant's initial compliance, but then becoming less compliant, either because of impatience or thinking he's being harassed or not wanting to have anything further happen. What should a police officer do? Your honor, at that point, the officer had the opportunity to have a consensual encounter with Mr. Evans. Mr. Evans, if it was truly consensual, could have opted to walk away, could have opted to decline to answer the questions or remove his hands from his pockets. The factors that your honor mentioned, such as it being a high crime area, being late at night, the officer's understanding that Mr. Evans was coming from a house that the officer believed was a known drug house. Those are all factors that can be considered, but Officer Harreld never testified that those things made him concerned for his safety. He never said that he was fearful, and he never said that he thought Mr. Evans had a weapon. So, without the testimony... I thought that he testified that it would be reasonable, or possible, or likely, that someone in that area potentially involved in drug activities would be armed. Your honor, he did say that he believed the area was a known drug area, and that, I don't remember the exact language, but he did make a reference that some drug dealers are known to carry firearms. However, he did also say that he did not know if the drug dealers in that area carry firearms, and he also did not say that he suspected Mr. Evans of being a drug dealer or participating in any narcotics activity at all at that point. He specifically said that when he was patting Mr. Evans down, he was not looking for narcotics. He specifically said that. If that was what he was doing, if he thought he had probable cause to search Mr. Evans for some narcotics-related offense, then he needed to testify that the purpose of my search was because I believed there was a narcotics-related offense, and then to explain why. He specifically said he was not looking for narcotics, and he specifically said that he did not know if the drug dealers in that area even carried firearms. And he also did not testify as to any bulges in Mr. Evans' pockets or waistband. He did testify that Mr. Evans did not have his hands in his pockets initially when he approached him, and he did take his hands out of his pockets multiple times after being asked to. And at no point did the officer see anything, or at least testify that he saw anything, that indicated that there was a weapon on Mr. Evans. So, I believe that the factors of the location and the time and where Mr. Evans was coming from do not support a reasonable, articulable suspicion that Mr. Evans might be armed or in some other way able to harm the officer. And there were no other people around, so we're only worried about Officer Harreld's concern for his own safety in this case. Ms. Shaver, you indicated that the officer didn't testify that he felt that he was careful for his own safety. Is it a subjective test or an objective test as to that determination, whether or not the could cause the officer to fear for his safety? It is an objective test, Your Honor. I believe the trial court treated it as if it was a bit of a subjective test, but it is an objective test as to whether a reasonable person in the officer's circumstances, a reasonably prudent person, would have felt that their safety or the safety of others was in danger. So it's not necessary here that the officer testified that he had a fear for his own safety? Correct, Your Honor. There's one factor that can be considered, but that is correct. It is an objective test. It is not required that he say so. Even if this court finds that Officer Harreld was justified in seizing Mr. Evans, that doesn't give him an automatic right to search Mr. Evans for weapons. Even if Officer Harreld still considered Charles to be a burglary suspect at that point, that alone is not a justification for a pat-down. The record doesn't specify either way. I don't believe he still considered him to be a suspect at that point, but even if he had, that alone is not justification. And if this had been a consensual encounter, Charles choosing to terminate that consensual encounter by not removing his hands from his pockets, that alone cannot constitute reasonable suspicion for a search. If this had been consensual, then Charles asking why and not complying can't be the seizure, and that search cannot happen without a valid seizure. One presupposes the other. On the final request, Charles asked why and indicated his intent to leave his hands in his pockets, while Officer Harreld indicated his intent that Charles remove them. If an officer reasonably believes a person he is questioning is armed and dangerous, he may conduct a pat-down for weapons. The question is whether a reasonably prudent officer in Harreld's circumstances would be warranted in the belief that his safety or the safety of others was in danger. He must be able to point to specific and articulable facts why he believed that search was necessary. We don't have testimony like that here. Officer Harreld said the purpose of the pat-down was because Charles had his hands in his pockets. He did not know what was in the pockets. That's why he did not know if Charles had a weapon. We know that putting an item in a pocket is not enough to raise reasonable suspicion, so putting hands in a pocket without anything in them, Officer Harreld had seen Charles' hands, knew he didn't have anything. That also should not be enough. There was no reasonable articulable suspicion presented, suggesting that Charles placing his hands in his pockets indicated that there was any criminal activity that he was involved in. There are many innocuous reasons a person can put their hands in their pockets. A reasonably prudent person would not think that their safety was at risk just because somebody placed their hands in their pockets. Officer Harreld had not seen Charles place anything suspicious in his pockets, nor had he seen any concerning bulges. Charles was not acting nervous. He was not sweating. His eyes were not darting. He was not being aggressive. His speech was not unusual. He was very cooperative throughout the encounter up until that point. And even then, all he did was ask why. He didn't become aggressive or start threatening anybody. He just asked why and didn't remove his pockets. Even if this Court finds that the search itself was justified, it exceeded the scope of the necessary to determine if Mr. Evans had a weapon on this person. An officer may seize contraband detected during the execution of a Terry search if the identity of the item of contraband is immediately apparent. There was no testimony regarding any unique tactile characteristics that these items had that readily identified them as contraband. They do make that argument, Your Honor. Our position is that it has not been forfeited. In the Defense Counsel's written motion, they raised the specific issue that the sole justification for searches allowed under the Terry exception is the protection of officers and others in the vicinity not to gather evidence. The Defense Counsel in the written motion further argued that an officer may frisk only if it has reason to believe a defendant is armed and dangerous and the scope must be strictly limited to search for weapons and if the protective search goes beyond what is necessary to determine if a suspect is armed is no longer valid under Terry. The concern with the forfeiture rule is that there is not a complete record for this Court to review. Because Officer Harreld was questioned by both parties about what took place during that pat-down, and he did provide evidence about that, because Defense Counsel rains it, because we do have a complete record, because he was asked, there's not a concern that this Court doesn't have a complete record in this case. So I don't believe that argument has been forfeited. Harreld testified that he felt what he believed was a pipe, and at trial he elaborated and said it was a short, round object. He did not testify regarding why the texture, the size, the shape, the feel of it was consistent with contraband as opposed to other innocuous items. The State presented no evidence to show how it was immediately apparent to Harreld that the items he felt during that pat-down were contraband. If he did a flat-handed search designed to discover a weapon, what he felt would have been consistent with many innocuous items. In his right pocket, which is where the pipe was ultimately recovered, it could have been a pen, a tire gauge, an e-cigarette, a flashlight, a laser pointer. It would not have been readily apparent from doing a flat-handed pat-down that that item could only have been drug paraphernalia. There was no testimony that it had a bulbous end, that it was warm to the touch, or anything that would make it more unique to being drug paraphernalia versus something else. In his left pocket, Mr. Evans had .034 grams of what turned out to be crack cocaine. That amount was so small that the Illinois State Police crime lab was not even able to get a completely accurate measurement because anything under .1 grams is too low to really accurately measure. So that was a very small amount. Also, Officer Harreld never testified that he felt a baggie with a knot in it. At the motion hearing, he did not even say he felt a rock-like substance. That was mentioned for the first time at trial. Additionally at trial, it was revealed that Mr. Evans also had a wallet on his person. We don't know where the wallet was in his pocket. We don't know what was in the pocket with the wallet. But it was revealed at trial that there was a wallet in the pocket. Charles was not seen doing anything unusual prior to this fact. He was not seen exchanging anything with anyone, and he did nothing to suggest the items in his pockets were contraband versus other innocuous items. Unless there are any further questions? We would ask the Court to reverse Mr. Evans' conviction. Thank you. Thank you. Mr. Zimmer? Good morning. This case is a textbook example of how a police officer should conduct their job. A police officer is responding to a 911 call, and he's within one block of the residence where the alleged burglary occurred. He sees a suspect walking. It's late at night. And he hears that his other officers have already responded to the scene. So what is the rational thing to do here? Try to ask this individual if he's seen anyone or has seen anything that is relevant to this crime. He does turn his car around, and he gets out of the car and talks to this individual. As the trial court held and the states agreed, this was a consensual encounter because there was no authority that was really shown. He was just trying to get some relevant facts to help in the investigation. Moreover, the state's position is that the defendant here would feel free to go about their business because if he is innocent, then why would there be an issue regarding this? There was no show of authority. There's one case that the defendant argues was a show of authority where the police officer drove his car in front of the defendant who was on a bike. Yes, that does make more sense as a show of authority, but here the officer simply drove up, got out, and asked the defendant a question. That's clearly a consensual encounter. Moreover, when determining what a consensual encounter is, there's the case Minden Hall, which discusses several factors as to whether a person would feel free to leave. These consist of the threatening presence of several officers. That was not the case here. A display of a weapon by an officer. That was not the case here. Physical touching of the person. That was not the case here until there was a seizure. Language or tone of voice indicating compliance may be compelled. That was also not the case. Here, the officer simply saw the defendant, turned around in his squad car, exited the car, and talked to him. The Minden Hall factors were not present. There was no show of authority, and there was no seizure at this point in time. He's simply asking if he saw any witnesses. A reasonable person would think if they were stopped in the middle of the night by a police officer, and the officer began asking questions about, have you seen anything, there was a burglary, where are you going, and then begins to direct you to remove your hands from your pocket, that at that point you can just turn around and walk away down the sidewalk. Well, throughout this entire encounter, it's slightly transforming as the state puts forth in its brief. The state does agree with, Your Honor, that after the multiple times of noncompliance by defendant, and the defendant asks why, that clearly becomes why do I have to comply, why do I have to do this? That's not the question I asked. I asked, when you're stopped, maybe you're asked one question, you take your hands out of your pocket once, and the officer is either repeating what he said, or he says I don't, you know, I don't know anything about that, I'm going home. Turn and walk away. That a reasonable person would think that would be okay. That the police officer would just stand and watch him walk off into the, not the sunset, I guess. Well, it depends, Your Honor. In this case, I believe up to that point in time that yes, it would be reasonable. You think, if we interviewed 100 people on the street, that they would think that they could walk away from the police officer? I'm not exactly sure about that, Your Honor. I'm not either. But there's also cases. That's the legal standard. Yes, Your Honor. They pretend that it's reasonable and that people think that they can suspend a police inquiry. Well, it's difficult as this is all within their own mind as to whether they feel free to leave. That's why the law makes this, these somewhat bright line rules, whereas if the defendant does try to leave then that kind of forces the police officer's hand as to whether he's going to force him to stay, or whether he's not going to, or let him go. So, I believe that is why there is the distinction in the law, Your Honor. And so, going forth to that point in time on this evening, the defendant alternatively argues if he was not initially seized, then he was seized when Harold asked him for the first time to remove his hands. Again, the State's position is that it is pretty reasonable for an officer to not want the suspect to put their hands in their pockets. I'm sure this is just taught in their basic police training course. You said suspect. Pardon me? You said suspect. At this point, it's just an individual. You're saying he's asking questions about have you seen anybody running around? I apologize. That was a misstatement. But, eventually he was a suspect. What if I stopped you and said, take your sunglasses off. It's nighttime. Would I feel reasonable like I could leave? Reclining? I believe it would also have to do with how the police officer approached. Would he be saying it in a teasing manner, walking by him? Would he get out of his car and run up to the guy and yell at him? I think those are all factors to take into consideration, Your Honor. But, I think simply asking to remove his hands, there was no demand within that that the defendant had to stay. And that defendant never indicated his desire to leave. So, there was never really any full, you don't know whether he was felt, how he felt in his mind. Whether it was reasonable for him to feel like he could leave or if he had to feel like he was going to stay. So, up to that point in time, it should still be considered a consensual encounter. As defendant refused to comply, this obviously transformed and somewhat escalated because defendant then forced the police officer's hand by saying, why? And at this point in time, contrary to appellate counsel's statements, there were plenty of reasonable, articulable facts that were present. As Justice Harris noted, it is an objective standard so the exact testimony is not completely conclusive. But, if you look at the state's brief on page 18, the trial court states the different factors. The officer then, when confronted with defendants who's substantially larger, he's the only officer, it's 154 in the morning in a high crime area, the defendant keeps putting his hands in his pockets contrary to the direction of the officer and then ultimately refuses to remove them and asks the officer why. That's what created in the officer's mind reasonable concern for his safety. So, that led to the transformation of the consensual encounter into the lawful Terry seizure because the officer had a reasonable belief, based on these factors, that the person in question may be armed or dangerous. And then, the officer is allowed to conduct a limited background search for weapons. When you look at these cases, the defendant cites pages 32 and 33 of this brief, people v. Davis, people v. Dotson, people v. Smith, where the courts found that the defendant putting his hands in his pockets could have been for some innocuous reason discounted the officer's safety as a potential basis for the frisk. What you're suggesting here would go against those three cases, correct? Yes, Your Honor. While I don't know the exact facts of each and every one of those cases, I believe here, based on the totality of the circumstances, there were plenty of reasonable and articulable factors. The officer was responding from a 911 call about a crime. It's a burglary crime. They may have had a weapon on him. That's a distinct possibility. Here, he's within one block of the crime. And then, when he begins talking to the defendant more, he learns that he's coming from his friend's house, which the officer knows to be a narcotics house, and he states that with narcotics there's often firearms. So, I believe all these circumstances, without looking at them in a vacuum, which I believe these cases seem to do, it's very clear that there were reasonable and articulable facts here. Did the trial court here make a finding that the officer objectively would have feared for his safety prior to frisking? I'm not sure if they explicitly used the term objective, but the trial court did find that these facts, which I just read from the trial court statement, led to the officer to fear for his safety. What's the standard of review then for this court for that finding? Is it manifest weight, or is that then de novo? Finding of facts are reviewed for clear error, only to be rejected if they're against the manifest weight of the evidence. Is that a finding of fact? The trial court stating that he had a reasonable fear for his safety. The state's position would be yes, Your Honor. And then the ultimate ruling as to whether suppression is warranted is de novo. Further evidence was provided. Testimony was presented that Harold was more concerned for his own safety, and I believe the officer explicitly used safety, with defendant being in front of him, than what was being said over the radio. He was asked about whether it determined at that point in time there was actually a crime, or whether it was just a false call. And he said he was in fear for his own safety because the defendant was much bigger than him, and Harold was the only officer on the scene. He also stated he didn't know if the defendant had a knife, gun, or other weapon. And while the defendant somewhat characterizes this as him not knowing, the state sees it as more of he very possibly could have it. And with all these other articulable facts from the case, that seems to be what he was meaning. He was in a high-crime area. Guns were more likely. Late at night, the defendant just left the known drug house and refused to remove his hands from his pockets. Why did he keep putting his hands in the pockets? This caused the officer to fear for his safety, so he did a pat-down search. If an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. Here, Harold specifically testified that what he felt in the defendant's right pocket was a crack pipe. He stated it was short and round. Further, the fact that the defendant just came from a drug house, this heightens that suspicion or probable cause that this was, in fact, a drug pipe in his pocket. And the state does argue that the defendant forfeited this argument because there is very little testimony about the smoking pipe being a short, round object because he was not questioned in depth on it by defense counsel, who had the burden to prove the motion to suppress, that it should be suppressed. And at trial, Harold further testified he was an experienced officer who focused on drug-related crimes as part of the Vermillion County Metropolitan Enforcement Group. He participated in many controlled purchases of narcotics, destroyed narcotics, and was also an evidence custodian. He had extensive knowledge and experience with drugs and drug paraphernalia. Again, the crack pipe was immediately apparent to Harold, and this was not a violation of defendant's privacy, as I previously cited the Dickerson case, which is Supreme Court. This evidence then provided the additional probable cause that was necessary to determine the search of his other pocket, or to then search his other pocket where the regardless, the pipe was enough to arrest him, so the cocaine would have been found anyway as a search incident to arrest, most likely. As the search and seizure was lawful, the items of contraband were admissible, and the trial court did not err in denying defendant's motion to suppress. If there is no further questions, the state will ask this court to affirm the trial court's judgment. Thank you, Your Honors. Thank you, Mr. Zimmerman. Ms. Shaver, rebuttal argument? Your Honor, the state can't have it both ways. Either the initial encounter was consensual, which means that there was no reasonable articulable suspicion to justify making a seizure, or it was consensual. Either it was consensual and there was no suspicion, or there was suspicion and it makes Mr. Evans a suspect. Well, why couldn't the officer develop a suspicion after the initial contact? He could, Your Honor. In this case, there's nothing to support the fact that that happened. All Mr. Evans did, all that changed between his initial approach, and when he was placed under arrest when he was patted down, was him asking why and no longer complying with the multiple requests. He'd already done that multiple times. Isn't it correct that he was putting his hands in his pockets repeatedly? He was, Your Honor, and he was removing them after he was asked to remove them. There was no testimony that Officer Harrell told him to keep his hands out of his pockets and that he was not complying with that order. If it was ordered to remove his hands, he would remove his hands. They did make their way back in. Again, we don't know how many times multiple is. That could be two, that could be ten, we don't know. We don't know over how long of a period of time that happened. The first time he was asked to remove them was three to five minutes into the conversation, and then multiple times thereafter, we don't know over what amount of time. Did the trial court make a finding that officer safety was a concern here? Your Honor, the language that the court used, you'd ask Mr. Zimmerman about the objective standard if the court made such a finding. The court's finding was that looked at from an objective standard, this had somewhat created the reasonable suspicion the officer is talking about taking the hands out of the pockets. And for this officer, under these circumstances, it was reasonable for him. That was the finding that the officer made, that Mr. Evans' actions had created the officer, in the officer's mind, a reasonable concern for his safety. That was the trial court's finding. Then would you agree the manifest weight standard applies? Your Honor, I believe that we should be reviewing, this court should be reviewing this case de novo. We are looking at the law applied to the facts of this case, Fourth Amendment, so we are looking at how those facts fit into the legal framework here. So our position is that this would be a de novo review. Well, isn't that a finding of fact, or let me ask you, is it a finding of fact for the trial court to say that the officer, under these circumstances, could have feared for his safety? Your Honor, I would still take the position that that's not a finding of fact because the trial court has applied the framework of the law to the facts. The finding of fact would be that Charles did take his hands out of his pocket, that the officer did get out of his car and approach him. Our position would be that those would be the findings of fact. Briefly, regarding the officer testifying about Charles being larger and him being the only officer, Mr. Evans only had 10 pounds on Officer Harold. Even though he was substantially taller, he is a tall, thin man. He only had 10 pounds on him. He's also 60 years old. Not that that would make anybody not able to be surprised still, but this is not a young 20-year-old who is significantly larger, looks like a linebacker. Mr. Evans is tall and lanky. He is a fully grown man and was not being aggressive. So those were not reasonable concerns for his safety. Also the burden... That sounds like age discrimination. It's not intended to, Your Honor. Also regarding the burden, in a motion to suppress the defendant has the burden to show that he's doing nothing unusual at the time and then the burden shifts to the state to show that the evidence made for a legally proper stop. So our position is that it was the state's burden to present testimony regarding the description of the items in the pockets such that they were obviously contraband. If there are no further questions? I don't see any. Thank you, Your Honor. Okay. Thank you both. The case will be taken under advisement and a written decision shall issue. The court stands in recess.